UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONALD BRINK

                Plaintiff,

      v.

CITY OF ROCHESTER, ROCHESTER
POLICE DEPARTMENT, STEPHEN
BOILY, ALEXANDER LOMBARD,
LA'RON SINGLETARY, JOHN DOES
1-10, MJM FITCH INC., and
EAST/ALEXANDER HOLDINGS, LLC,

                Defendants.
_____

**DECISION AND ORDER**

6:20-CV-07049 EAW MJP

**INTRODUCTION**

Plaintiff Ronald Brink ("Plaintiff") has sued the City of Rochester ("City") and numerous employees of the Rochester Police Department ("RPD") (collectively "City Defendants"), and East/Alexander Holdings, LLC and MJM Fitch Inc., d/b/a Murphy's Law Irish Pub, for injuries arising out of an incident on November 1, 2019, during which he was subjected to force and arrested by RPD officers following a physical altercation at Murphy's Law Irish Pub ("Murphy's Law"). (Dkt. 1-3). City Defendants have moved for partial summary judgment on several of Plaintiff's claims and seek dismissal of all claims against the RPD, Officer Alexander Lombard ("Lombard"), and former RPD Chief La'Ron Singletary ("Singletary"). (Dkt. 57). For the reasons set forth below, and because Plaintiff has withdrawn many of the claims against which City Defendants have moved (thus mooting their motion on those claims), the Court grants City Defendants' motion in part

- 1 -

with respect to Plaintiff's fourth cause of action[1] against the City for conscious disregard of Plaintiff's medical needs, and otherwise denies the motion.

## BACKGROUND

### I.    Factual Background

The following facts are taken from City Defendants' Rule 56(a)(1) Statement of Material Facts (Dkt. 57-1), Plaintiff's Rule 56(a)(1) Statement of Material Facts (Dkt. 63), Plaintiff's complaint (Dkt. 1-3), and exhibits submitted by the parties, including body worn camera video footage (Exhibit G; Exhibit H; Exhibit I; Exhibit J).  The Court has noted the relevant factual disputes.

On the night of October 31, 2019, Plaintiff went to Murphy's Law, a bar located at 370 East Alexander Avenue, with his sister Alexis Brink, brother Joseph Brink ("Joseph"), and a friend.  (Dkt. 57-1 at ¶ 1; Dkt. 63 at 2).  Around 1:20 a.m. on November 1, 2019, a physical altercation occurred between Joseph and another bar patron, and Plaintiff intervened.  (Dkt. 57-1 at ¶ 2; Dkt. 63 at 2).  The extent of Plaintiff's participation in the physical altercation is disputed, as is whether Plaintiff sustained injury to his head during the fight inside the bar.  (Dkt. 57-7 at 25; Dkt. 62-11 at 29, 36-37; Dkt. 62-18 at ¶ 5).

RPD Sergeant Stephen Boily ("Boily") was across the street from Murphy's Law when he observed a large group of people exit the bar.  (Dkt. 57-7 at 17).  What occurred next is disputed.  According to Boily, Plaintiff was "throwing punches" as he exited the

---

[1]    Plaintiff confusingly labels his causes of action by several different numbers, depending on which defendant(s) are named.  The Court has utilized the first number assigned to each cause of action (*i.e.*, in sequential order) when discussing the causes of action herein.

bar.  (Dkt. 57-1 at ¶ 3; Dkt. 57-7 at 19).  Boily ordered Plaintiff to stop fighting, but Plaintiff stepped in front of Boily to engage with a member of the group.  (Dkt. 57-1 at ¶¶ 4-5; Dkt. 57-7 at 19-20).  Believing that Plaintiff would not stop fighting, Boily drew his baton and issued a strike to the back of Plaintiff's right thigh, causing Plaintiff to fall to his knees.  (Dkt. 57-1 at ¶¶ 5-6; Dkt. 57-7 at 20).  Boily then used a defensive tactic to maneuver Plaintiff to the ground and place him in handcuffs.  (Dkt. 57-1 at ¶ 6; Dkt. 57-7 at 21).

Plaintiff disputes that he was fighting as he exited the bar, and that he exchanged blows with anyone outside the bar.  (Dkt. 62-2 at 13; Dkt. 63 at 2).  According to Plaintiff, Boily did not specifically instruct him to stop fighting before he struck Plaintiff in the leg with a baton.  (Dkt. 62-2 at 15-16; Dkt. 62-18 at ¶ 9; Dkt. 63 at 2).  After being struck, Plaintiff fell on the ground and hit his head on the sidewalk.  (Dkt. 62-2 at 16; Dkt. 62-11 at 42-43; Dkt. 62-18 at ¶ 9; Dkt. 63 at 2).  Plaintiff lost consciousness, and when he came to, he was lying on his stomach on the sidewalk with his hands handcuffed behind his back.  (Dkt. 62-2 at 16; Dkt. 62-11 at 42-43).

Boily placed Plaintiff in a seated position against the bar building to await transport to the Monroe County Jail.  (Dkt. 57-1 at ¶ 7; Dkt. 63 at 2).  Lombard responded to the scene to help transport the suspects.  (Dkt. 57-1 at ¶ 8; Dkt. 63 at 2).  Lieutenant[2] Gregory Bello ("Bello") reported to the scene as the commanding officer.  (Dkt. 62-16 at 42-44).  Lombard's and Bello's interactions were captured on their body worn cameras, the footage of which the Court has viewed carefully.  "At the summary judgment stage, facts must be

---

[2]    Bello has since been promoted to Captain, but his rank was Lieutenant at the time of the incident.  (Dkt. 57-1 at ¶ 8; Dkt. 62-16 at 5, 41).

viewed in the light most favorable to the nonmoving party only if there is a *genuine* dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted and emphasis added). Where a videotape of the relevant events exists and there are no disputes about its accuracy, a court deciding a motion for summary judgment must "view[] the facts in the light depicted by the videotape." *Id.* at 381; *see also Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court on . . . [a motion for summary judgment] if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party."). In accordance with these principles, the Court's factual recitation of what occurred next relies on its own review of the body worn camera footage, and not on the gloss thereon provided by either party.[3]

Bello's body worn camera footage depicts a conversation with Boily at 1:28 a.m. in which Boily informs Bello that he deployed a baton strike against Plaintiff. (Exhibit J at 1:28:00-1:29:15). Bello states that an ambulance should be called for every person with an injury or who force was utilized against. (*Id.*). Boily shrugs in response. (*Id.*).

Lombard's body worn camera footage reflects that as he approaches Plaintiff to transport him and asks him to stand up, Plaintiff immediately says "I need to go to the hospital." (Exhibit G at 1:26:40). Lombard responds, "Alright, we'll figure that out, an

---

[3]    Because the Court relies on the body worn camera footage, the Court need not resolve Plaintiff's argument that it should disregard the affidavits from Boily and Lombard. (Dkt. 61 at 7-11). The Court has noted where the body worn camera footage directly contradicts material information from the affidavits.

ambulance is coming, but I need you to stand up." (*Id.* at 1:26:40-1:26:50). Plaintiff is unable to get himself off the ground and asks for help, which Lombard provides. (*Id.* at 1:26:50-1:27:20). Plaintiff requires the assistance of two officers to stay upright as they walk him to Lombard's police vehicle. (*Id.* at 1:27:20-1:28:00). The officers put Plaintiff in the car, and Lombard says "I haven't checked him" to the other officer. (*Id.* at 1:28:00-1:28:30). Lombard approaches Plaintiff to ask him identification questions, and Plaintiff says, "Help me." (*Id.* at 1:28:50-1:29:00). Plaintiff is sitting in an awkward position but is unable to adjust himself to an upright position without Lombard's assistance. (*Id.* at 1:29:00-1:29:17). Lombard asks for Plaintiff's name and date of birth, which Plaintiff eventually answers in slurred speech. (*Id.* at 1:29:17-1:29:50). Lombard asks for Plaintiff's address, but Plaintiff does not respond, and Plaintiff's eyes are closed. (*Id.* at 1:29:50-1:30:08). Lombard, after asking multiple times and receiving no answer, says "The longer you take to give me answers, the longer we are going to be sitting here." (*Id.* at 1:30:08). Plaintiff moans and appears to be losing consciousness. (*Id.* at 1:30:08-1:30:10). Lombard appears to become frustrated that Plaintiff is not answering his questions and shuts Plaintiff inside the vehicle. (*Id.* at 1:30:10-1:30:15). When Lombard opens the door to the vehicle about a minute later to ask Plaintiff more questions, Plaintiff is still unconscious (Exhibit H at 1:31:30), and he remains unconscious throughout the remainder of Lombard's body worn camera footage despite multiple officers' attempts to wake him (Exhibit I at 1:33:08-1:33:25, 1:34:15-1:34:22, 1:35:30, 1:35:45-1:36:45, 1:37:40-1:37:50). A female officer responds to Lombard's call for assistance, and she administers Narcan to Plaintiff. (*Id.* at 1:33:00-1:33:30). Lombard asks her if an

- 5 -

ambulance has been called, and she responds that she does not know. (*Id.* at 1:33:25-1:33:30). Lombard then calls over his radio to inquire about an ambulance and is told that no ambulance is on its way, but that they can "get that started" and send one for Plaintiff. (*Id.* at 1:33:50-1:34:15). Firefighters arrive at 1:38 a.m. and pull Plaintiff out of the police vehicle (*id.* at 1:38:00-1:40:00), and an ambulance arrives at 1:40 a.m. to transport Plaintiff to the hospital (*id.* at 1:40:00-1:44:17; Dkt. 57-1 at ¶ 14; Dkt. 63 at 3).

Plaintiff arrived at the hospital unconscious and had to be placed on a ventilator to ensure that his brain received adequate levels of oxygen. (Dkt. 57-8 at 15-16, 19; Dkt. 62-2 at 20).[4] Plaintiff may have arrived hypoxic, meaning that his brain was initially not getting enough oxygen. (Dkt. 57-8 at 17). He was treated for a traumatic brain injury, including swelling and two sources of bleeding in the brain, which caused respiratory failure.[5] (Dkt. 57-8 at 6, 8; Dkt. 62-2 at 20-21).

## II.    **Procedural Background**

Plaintiff filed a complaint in Monroe County Supreme Court on October 29, 2020. (Dkt. 1-3). The case was removed to federal court on December 8, 2020, based on federal question jurisdiction. (Dkt. 1). Discovery was completed on December 6, 2024. (Dkt. 48).

---

[4]    Plaintiff arrived at the hospital "essentially comatose." (Dkt. 57-8 at 19). On the Glasgow Coma Scale ranging from 3 to 15, Plaintiff scored a 3, meaning that he was functioning at the lowest capacity on the scale. (*Id.*).

[5]    Plaintiff's treating neurosurgeon diagnosed him with a subarachnoid hemorrhage, a subdural hemorrhage, cerebral edema, encephalopathy, and respiratory failure. (Dkt. 57-8 at 6, 8).

City Defendants filed the instant motion for partial summary judgment on August 5, 2025, (Dkt. 57), and Plaintiff filed opposition papers (Dkt. 61; Dkt. 62; Dkt. 63).

## DISCUSSION

### I.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott*, 550 U.S. at 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986)). "The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v. Franklin Credit Mgmt. Corp*., 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654

F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358 (citation omitted).  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

## II.    <u>Deliberate Indifference to Plaintiff's Serious Medical Needs</u>

### A.  Second Cause of Action against Boily & Lombard

"A claim for deliberate indifference to a serious medical need for an arrestee [is] governed by the same standard as a pretrial detainee when their claim arises from their arrest."  *Keith v. Mahar*, No. 5:24-CV-1391 (BKS/MJK), 2024 WL 5077348, at *4 (N.D.N.Y. Dec. 11, 2024) (citing *Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 395 (S.D.N.Y. 2020)).  In the context of pretrial detention, claims involving the denial of medical care are analyzed under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  To prevail, "Plaintiff['s] Fourteenth Amendment claim must meet two requirements: (1) that Plaintiff[] had a serious medical need . . . and (2) that the Defendants acted with deliberate indifference to such needs."  *Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019) (citations omitted).

The serious medical need element "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain."  *Id.* (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citations omitted)).  While there is "no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical

condition," *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003), courts consider factors such as (1) "whether a reasonable doctor or patient would find the injury important and worthy of treatment," (2) "whether the medical condition significantly affects an individual's daily activities," and (3) "whether the illness or injury inflicts chronic and substantial pain," *Charles*, 925 F.3d at 86 (citation omitted).

The second requirement—deliberate indifference—requires a plaintiff asserting a Fourteenth Amendment claim to prove the defendants "acted intentionally in denying adequate medical care, or recklessly failed to act with reasonable care . . . even though the defendant[s] knew, or should have known, that the condition posed an excessive risk to health or safety." *Dumel v. Westchester County*, 656 F. Supp. 3d 454, 465 (S.D.N.Y. 2023) (quoting *Darnell*, 849 F.3d at 35 (citation modified)). Evidence that a defendant acted negligently is insufficient to establish deliberate indifference. *Darnell*, 849 F.3d at 36 ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently."). "The Second Circuit has found that a delay in treatment can give rise to a constitutional violation, but only in particularly egregious circumstances." *Lawrence v. Evans*, 136 F. Supp. 3d 486, 490 (W.D.N.Y. 2015) (collecting cases), *aff'd*, 669 F. App'x 27 (2d Cir. 2016); *see Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996) (reasonable jury could infer that delay in giving care to pretrial detainee who was in insulin shock constituted deliberate indifference).

City Defendants do not make arguments that Plaintiff's traumatic brain injury, which included swelling and two sources of bleeding in the brain, was not "sufficiently serious" to satisfy the objective prong. City Defendants argue that no rational jury could

conclude that Plaintiff has satisfied the subjective prong of the test because Plaintiff's symptoms were not severe enough to inform City Defendants that Plaintiff faced a substantial risk of serious harm, and because Plaintiff's medical condition was addressed without tangible delay.  (Dkt. 57-2 at 5-6).  The Court disagrees that City Defendants are entitled to summary judgment on this claim.

On the first contention, the Court agrees with Plaintiff that City Defendants cite an incorrect legal standard.  (*See* Dkt. 61 at 11).  Although City Defendants focus on whether the officers had actual knowledge whether Plaintiff faced a substantial risk of serious harm, the Second Circuit held in *Darnell* that the second prong was to be defined objectively, and correspondingly, that the pretrial detainee "must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to health or safety."  849 F.3d at 35 (emphasis added).

Applying the correct legal standard and viewing the evidence in the light most favorable to Plaintiff as the nonmovant, the Court finds that a reasonable jury could determine that officers on the scene should have known that Plaintiff was experiencing an excessive risk to health or safety.  There are questions of fact whether any officer performed a medical evaluation of Plaintiff, even though it is RPD policy to medically evaluate anyone subjected to force.  (Dkt. 57-6 at 5; Dkt. 57-7 at 11; Dkt. 62-14 at 4).  At no point in Boily's affidavit or deposition did he indicate that he performed a medical evaluation of Plaintiff, and he specifically stated in his deposition that he did not instruct anybody at the

scene to have Plaintiff evaluated by medical personnel.  (Dkt. 57-7 at 24).  Lombard stated

in his affidavit that he evaluated Plaintiff and saw no visible injuries or blood (Dkt. 57-5 at

¶ 11), but Lombard made no mention of that in his deposition, and his body worn camera

footage reflects that directly after putting Plaintiff into the police vehicle, Lombard says to

another officer that Lombard had yet to "check" Plaintiff.   (Exhibit G at 1:28:20).

Lombard's body worn camera footage does not subsequently show him or any other officer

performing a medical evaluation of Plaintiff beyond ensuring that he was breathing,

squarely contradicting Lombard's statement in his affidavit.  What Lombard's body worn

camera footage does show is Plaintiff say "I need to go to the hospital" immediately after

Lombard approaches him (*id.* at 1:26:40), Plaintiff asking for help because he is unable to

get himself off the ground (*id.* at 1:26:50-1:27:20), Plaintiff requiring the assistance of two

officers to stay upright as they walk to Lombard's police vehicle (*id.* at 1:27:20-1:28:00),

Plaintiff saying "help me" once he is placed inside the police vehicle (*id.* 1:28:50-1:29:00),

Plaintiff's inability to sit upright in the police vehicle (*id.* at 1:29:00-1:29:17), Plaintiff's

inability to clearly answer Lombard's questions (*id.* at 1:29:20-1:30:15), and Plaintiff

moaning and losing consciousness (*id.* at 1:30:00-1:30:15).   Lombard then seemingly

becomes frustrated that Plaintiff is not answering his questions and shuts Plaintiff inside

the vehicle.  (*Id.* at 1:30:15).  When Lombard opens the door to the vehicle to ask Plaintiff

more questions, Plaintiff is still unconscious (Exhibit H at 1:31:30), and he remains

unconscious throughout the remainder of Lombard's body camera footage despite multiple

officers' attempts to wake him (*id.* at 1:33:08-1:33:25, 1:34:15-1:34:22, 1:35:30, 1:35:45-

1:36:45, 1:37:40-1:37:50).   In consideration of that evidence, the Court finds that a

reasonable jury could determine that City Defendants should have known that Plaintiff was displaying symptoms beyond mere intoxication that posed a risk to his health or safety.

In addition, the Court believes that a reasonable jury could conclude that City Defendants recklessly failed to act with reasonable care to mitigate the risk that the condition posed to Plaintiff.  As discussed, there is conflicting evidence in the record whether an officer performed a medical evaluation of Plaintiff, meaning that a jury could find that no officer did so and that the failure was reckless in light of the officers' knowledge that force was deployed against Plaintiff.  Moreover, a jury could find that the apparent delay in calling for an ambulance constituted a failure to act with reasonable care. Although Bello testified that he directed Boily to have an ambulance called for Plaintiff because Boily had struck Plaintiff with a baton (Dkt. 62-16 at 92-93), there is no evidence that Boily did so, nor that he instructed anyone else to call (Dkt. 57-7 at 24).  Boily's inaction regarding medical services could particularly be considered reckless if the jury chose to credit Plaintiff's version of events that Boily's use of force caused Plaintiff to fall forward, slam his head into the concrete sidewalk, and lose consciousness.  (Dkt. 62-2 at 16; Dkt. 62-11 at 42; Dkt. 62-18 at ¶ 9).  Bello believed that the call for an ambulance was made prior to Plaintiff losing consciousness (Dkt. 62-16 at 96-98), but that is belied by Lombard's body camera footage, which reflects that as of 1:34 a.m.—several minutes after Plaintiff requested medical attention, Plaintiff lost consciousness, and Bello directed Boily to request an ambulance (Exhibit J at 1:28:00-1:29:15)—emergency medical services had yet to be called (Exhibit I at 1:33:50-1:34:15).  In the Court's view, a jury could determine that Lombard's delay in calling for an ambulance—driven by his evident frustration with

Plaintiff because he believed that Plaintiff was intoxicated and simply did not want to talk to him (Dkt. 57-6 at 14; *see* Exhibit G, 1:29:00-1:30:20), causing him to shut Plaintiff in the police vehicle after Plaintiff had fallen unconscious (Exhibit G, 1:30:05-1:30:20)—constituted a reckless disregard of Plaintiff's need for prompt medical attention.

Accordingly, City Defendants' motion for summary judgment on Plaintiff's second cause of action is denied.[6]

### B. Municipal Liability—Fourth Cause of Action

Initially, Plaintiff's motion papers make clear that he has discontinued all claims against RPD (Dkt. 61 at 4) and withdrawn this claim against Singletary (*id.* at 16-17). Thus, this cause of action is asserted against the City only, and City Defendants' motion as to RPD and Singletary on this claim is denied as moot.[7]

Although City Defendants' arguments on this cause of action are not easily discernable, they appear to contend that because there is no evidence that the officers were

---

[6] In City Defendants' Attorney Declaration submitted in support of their motion for summary judgment, they state that they are "seek[ing] qualified immunity from the First and Second Causes of Action." (Dkt. 57-3 at ¶ 13). Because that paragraph incorrectly characterizes Plaintiff's second cause of action as one for false arrest and refers to a "Second Amended Complaint" that does not exist in this case, the Court presumes that this paragraph was included in error. Insofar as City Defendants did intend to seek summary judgment for those causes of action on qualified immunity grounds, City Defendants have failed to properly raise the issue by including it only in a single line of their Attorney Declaration and making no relevant arguments in their memorandum of law. In fact, City Defendants did not even move for judgment in their favor on the first cause of action. (*See* Dkt. 57 at 1).

[7] Plaintiff incorrectly states that City Defendants have not moved for summary judgment on the fourth cause of action. (Dkt. 61 at 5). In fact, City Defendants have moved on this cause of action. (Dkt. 57 at 1; Dkt. 57-2 at 8-9).

acting pursuant to an official policy adopted by the municipality itself, nor is there evidence that decisions regarding Plaintiff's medical care were made by an official responsible for establishing final policy on the subject, Plaintiff has failed to establish municipal liability for the purpose of his deliberate indifference claim. (Dkt. 57-2 at 8-9).

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (quoting *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* (citations omitted).

Here, City Defendants have satisfied their burden on summary judgment by pointing out that there is no evidence that the actions of which Plaintiff complains were taken pursuant to an official municipal policy or custom. *See Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) ("A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'") (quoting *Celotex Corp.*, 477 U.S. at 324).

In opposition, Plaintiff makes two arguments in support of his contention that genuine issues of material fact exist regarding whether the City can be held liable for the claimed violation of his constitutional rights: (1) that because Boily "shrugged off" Bello's directive to call for an ambulance for Plaintiff, and Bello himself dismissed Plaintiff as

merely intoxicated, there is evidence of "a de facto custom of disregarding the City's own written medical-care policy" (Dkt. 61 at 17); and (2) that because Boily was named in four prior lawsuits and Lombard "was retrained after this incident for failing to follow documentation and photographic requirements," the City "had notice of unconstitutional conduct," which reflects a "systemic tolerance of rule violations until after constitutional harm occurred" (*id.* at 17-18). Neither of these arguments can save Plaintiff's claim.

First, although the evidence does reflect that Boily "shrugged off" Bello's directive to call for an ambulance and that Boily did not seek medical attention for Plaintiff, there is no evidence that Boily's inaction was pursuant to any policy of the RPD. In fact, Bello's instruction to have Boily call for an ambulance because Boily used force against Plaintiff was fully compliant with the RPD policy requiring a medical evaluation of each person subject to force. (Dkt. 57-6 at 5; Dkt. 57-7 at 11; Dkt. 62-14 at 4). And even though it is true that Bello believed that Plaintiff was intoxicated (Dkt. 62-16 at 121-23), Bello nonetheless sought to have emergency services called to attend to Plaintiff. Because Bello's instruction was therefore in adherence with RPD policy, there is no evidence in the record that there is a "de facto custom of disregarding the City's own written medical-care policy," and no evidence that Boily's actions were pursuant to that alleged custom.

Second, the fact that Boily was named in four prior lawsuits and that Lombard allegedly underwent retraining is not sufficient evidence to meet Plaintiff's burden of establishing a question of fact whether the City has a systemic tolerance of rule violations. Boily testified that two of the lawsuits against him were for excessive force and occurred in the early 2000s, (Dkt. 62-12 at 123-24), but lawsuits regarding a different subject matter

than deliberate indifference to medical needs and which exist so remotely in time are not persuasive here.  Moreover, no evidence was provided regarding the outcome of those lawsuits and whether Boily was ever found liable.  In addition, even if it is true that Lombard was required to undergo training as a result of this incident, that would indicate that the City has a policy of remedying potential constitutional violations to prevent their reoccurrence, rather than support Plaintiff's contention that the City is systematically tolerant of such conduct.

For these reasons, the Court concludes that no rational jury could find that the actions Plaintiff complains of were undertaken pursuant to an official policy or custom of the City.  The City is entitled to summary judgment on Plaintiff's fourth cause of action.

## III.  Excessive Force Against the City, RPD, and Singletary—Third Cause of Action

From the Court's review of City Defendants' memorandum of law in support of their motion for summary judgment, their sole contention on Plaintiff's third cause of action is that the claim against Singletary must be dismissed because it is a claim for supervisory liability that has no merit.  (Dkt. 57-2 at 7-8).  Because Plaintiff specifically states in his response papers that he "withdraws . . . Plaintiff's Third Cause of Action against Defendant LA'RON SINGLETARY," (Dkt. 61 at 4), City Defendants' argument on this point is moot.  Since City Defendants do not make any contention regarding whether the City—the sole remaining Defendant on this claim—is entitled to summary judgment, the Court will not grant summary judgment on Plaintiff's third cause of action.

## IV.    Negligence—Seventeenth Cause of Action

City Defendants contend that because New York "does not recognize a cause of action for general negligence, negligent investigation," Plaintiff must proceed by way of traditional remedies of false arrest, false imprisonment, or malicious prosecution, and his general negligence claim must be dismissed.  (Dkt. 57-2 at 15-16).  Because that contention is an incomplete statement of law, the Court disagrees that Plaintiff's negligence claim warrants dismissal.

City Defendants are correct in two aspects: one, that "[i]t is well settled that New York does not recognize a cause of action for negligent investigation[,]" *Mancino v. Town of Glenville*, 234 A.D.3d 1191, 1192 (N.Y. App. Div. 2025) (citation omitted); *see Prezioso v. County of Niagara*, 213 A.D.3d 1302, 1306 (N.Y. App. Div. 2023); *Medina v. City of New York*, 102 A.D.3d 101, 108 (N.Y. App. Div. 2012); and two, that a plaintiff "seek[ing] damages for injury resulting from false arrest and detention . . . cannot recover under broad general principles of negligence but, instead, must proceed by way of the traditional remedy of false arrest," *Santoro v. Town of Smithtown*, 40 A.D.3d 736, 738 (N.Y. App. Div. 2007) (citation omitted); *see Greenaway v. County of Nassau*, 97 F. Supp. 3d 225, 239 (E.D.N.Y. 2015); *Simon v. New York*, 12 A.D.3d 171, 171 (N.Y. App. Div. 2004).

However, just because a claim for general negligence is barred under those circumstances does not mean that a general negligence claim is always improper against a municipality or police officer.  In other words, there is not—as City Defendants appear to suggest—a total prohibition on a plaintiff pursuing a general negligence claim against municipal actors.  *See, e.g., Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 425-32 (2013)

(denying the City of New York's motion for summary judgment on the plaintiff's negligence claim); *McCummings v. N.Y.C. Transit Auth.*, 81 N.Y.2d 923, 928 (1993) (affirming jury verdict in favor of the plaintiff for claim of common-law negligence against municipality). Rather, the state of the law in New York reflects that it is only a plaintiff who is challenging the legality of their arrest who must utilize the more specific causes of action relevant to their challenge and who may not pursue a claim for common-law negligence.

Here, City Defendants' arguments are inapplicable because Plaintiff is not pursuing a claim for negligent investigation, nor do any of his claims involve allegations of false arrest or malicious prosecution. Although Plaintiff does allege a cause of action for false imprisonment, none of the grounds advanced by Plaintiff on his negligence claim are duplicative of that cause of action. In general, Plaintiff is not challenging that RPD had lawful reasons to arrest him; instead, his negligence claim advances theories challenging the alleged lack of prompt medical care while he was in RPD custody. None of the reasons raised by City Defendants for dismissal of the negligence claim prevent Plaintiff from pursuing that claim. Thus, City Defendants' motion for summary judgment is denied on Plaintiff's seventeenth cause of action.

City Defendants make the additional argument that Plaintiff's negligence claim premised on negligent hiring, retention, and training should be dismissed. Inasmuch as Plaintiff has withdrawn his negligence claim pursuant to those theories (Dkt. 61 at 5, 20 ("Relating to Subparagraphs (D)-(H) and (T)-(U) of Paragraph 187, Plaintiff hereby withdraws these claims as duplicative.")), City Defendants' motion is denied as moot.

## V.    Plaintiff Has Withdrawn the Remaining Causes of Action Addressed in City Defendants' Motion for Summary Judgment

City Defendants make arguments about why they are entitled to summary judgment on Plaintiff's seventh cause of action for negligent hiring (Dkt. 57-2 at 9-11), eighth cause of action for negligent retention (*id.* at 11), ninth cause of action for negligent training and supervision (*id.*), tenth cause of action for assault against Lombard (*id.*), eleventh cause of action for battery against Lombard (*id.*), twelfth cause of action for battery committed in performance of a public duty against Lombard (*id.* at 11-12), thirteenth cause of action for false imprisonment against Lombard (*id.*), fourteenth cause of action for intentional infliction of emotional distress (*id.* at 12-14), fifteenth cause of action for negligent infliction of emotional distress (*id.*), and sixteenth cause of action for failure to intervene (*id.* at 14).  City Defendants also contend that RPD must be dismissed from the action as a division of the City.  (*Id.* at 16).  Because Plaintiff has withdrawn those claims, and all claims against RPD (Dkt. 61 at 4-5), City Defendants' arguments are moot.

## CONCLUSION

For the foregoing reasons, City Defendants' motion for partial summary judgment (Dkt. 57) is granted in part and denied in part.  Specifically, the Court grants City Defendants' motion on Plaintiff's fourth cause of action for municipal liability relating to conscious disregard of a serious medical condition.  In addition, because Plaintiff has withdrawn the following claims, they are hereby dismissed from this action: the first cause of action against Lombard; the third cause of action against Singletary; the seventh cause of action for negligent hiring; the eighth cause of action for negligent retention; the ninth

cause of action for negligent training and supervision; the tenth cause of action for assault against Lombard; the eleventh cause of action for battery against Lombard; the twelfth cause of action for battery committed in performance of a public duty against Lombard; the thirteenth cause of action for false imprisonment against Lombard; the fourteenth cause of action for intentional infliction of emotional distress; the fifteenth cause of action for negligent infliction of emotional distress; the sixteenth cause of action for failure to intervene; and subparagraphs (D), (E), (F), (G), (H), (T), and (U) of the seventeenth cause of action for negligence. Because Plaintiff has discontinued all claims against RPD, it is hereby dismissed from the action and the Clerk of Court is directed to terminate RPD as a defendant.

Thus, the following causes of action remain to be tried against the following defendants: first cause of action for excessive force against Boily; second cause of action for conscious disregard of medical needs against Boily and Lombard;[8] third cause of action for municipal liability relating to excessive force against the City; fifth cause of action for respondeat superior/vicarious liability against the City and Singletary; tenth cause of action for assault against Boily; eleventh cause of action for battery against Boily; twelfth cause of action for battery committed in performance of a public duty or authority against Boily; thirteenth cause of action for false imprisonment against Boily; and the seventeenth cause of action against the City, Singletary, Boily, and Lombard for negligence (except as to the

---

[8]     The second and seventeenth causes of action are also asserted against John Does 1-10. These defendants have apparently never been identified and it is likely too late to do so. This will have to be addressed in advance of trial.

theories of liability asserted in subparagraphs (D)-(H) and (T)-(U)).  Also remaining for

trial are the sixth, eighteenth and nineteenth causes of action against MJM Fitch, Inc. and

East/Alexander Holdings LLC.[9]

       SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 18, 2026
      Rochester, New York

---

[9]    There has been no appearance in this case by East/Alexander Holdings LLC.  This will need to be addressed in advance of trial.

- 21 -